Matthew D. Kaufman (Wyo. Bar #6-3960)
Marianne K. Shanor (Wyo. Bar #7-4841)
HATHAWAY & KUNZ, LLP
P.O. Box 1208
Cheyenne, WY  82003-1208
Phone:  (307) 634-7723
Fax:  (307) 634-0985
mkaufman@hkwyolaw.com
mshanor@hkwyolaw.com

ATTORNEYS FOR PLAINTIFF
J.C. ENERGY SERVICES, LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| J.C. ENERGY SERVICES, LLC, a Wyoming limited liability company, </br>            Plaintiff, </br> v. </br> ANADARKO PETROLEUM CORPORATION, a Delaware corporation </br>            Defendants. | ) </br> ) </br> ) </br> ) </br> ) Civil Action No. 16-CV-193-J </br> ) </br> ) </br> ) </br> ) </br> ) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS RESPONSE AND OBJECTION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW PLAINTIFF J.C. Energy Services, LLC ("J.C. Energy"), by and through its counsel, HATHAWAY & KUNZ, LLP, and hereby submits its *Memorandum in Support of its Response and Objection to Defendant's Motion for Summary Judgment*:

### I.     INTRODUCTION

The Court is well aware of the disputed facts and issues in this matter.  J.C. Energy is a Wyoming based oil and gas services company, which entered into a Master Service Contract with Anadarko Petroleum Corporation ("Anadarko") on August 8, 2012.  Complaint, *J.C. Energy Services, LLC v. Anadarko Petroleum Corp.*, No. 16-CV-193-ABJ, ¶ 8 (D. Wyo.) (Doc.

No. 1). Under the Master Service Contract, J.C. Energy provided inspection and consulting services. *Id.*

Due to the growth and operations of the company, J.C. Energy entered into a certain Employee Confidentiality, Non-Compete and Non-Disclosure Agreement ("Agreement") with Charles Scott Hall ("Hall"), one of their employees. *Id.* ¶ 9. The Agreement required Hall to not compete with J.C. Energy, not disclose information belonging to J.C. Energy, and maintain confidentiality of proprietary information belonging to J.C. Energy. *Id.* ¶ 10, Ex. A.

Less than six months after entering into the Agreement, Hall at the direction and behest of Aaron Kern, a production facility supervisor for Anadarko, began to blatantly breach his Agreement with J.C. Energy. Opinion in Granting in Part, Denying in Part J.C. Energy's Motion for Partial Summary Judgment, *J.C. Energy Services, LLC v. Hall et al.*, No. 14-CV-236-ABJ p. 14-15 (D. Wyo. Sept. 28, 2015) (Doc. No. 34) (hereinafter referred to "Opinion Granting Summary Judgment"); Kern Depo., at 38:7-40:2, 41:16-43:4, attached hereto as *Exhibit A*. Under the sponsorship of Kern, Hall not only formed his own competing company with the direction of Anadarko, but also obtained a Master Service Contract with Anadarko to provide the exact same services as J.C. Energy, at the exact same locations. Kern Depo., at 38:7-40:2, 41:16-43:4; Opinion Granting Summary Judgment, *J.C. Energy Services, LLC v. Hall et al.*, No. 14-CV-236-ABJ, p. 5 (D. Wyo. Sept. 28, 2015) (Doc. No. 34). Anadarko assisted Hall in the steps necessary to form a competing company during the process. Kern Depo., at 41:1-15, 44:1-45:25. It is undisputed Kern and others, including the legal department, at Anadarko had explicit knowledge of the Agreement, and even had a copy of the Agreement. Kern Depo., at 47:23-49:3, 51:3-54:24; Anadarko's Answers Interrogatories, p. 10, 13 attached hereto as *Exhibit B*. Despite direct knowledge of the express terms of the Agreement, Anadarko through Kern and

others, intentionally and improperly continued to induce and cause Hall to breach the terms of the Agreement. It is no surprise that Anadarko prefers to hire individuals they have worked with before, as it saves them time and money in having to train people on Anadarko projects. Kern Depo., at 32:23-33:5. Thus, Anadarko had a clear motivation for disregarding the Agreement, as it was in their financial interest.

J.C. Energy initially sent a cease and desist letter through counsel to Hall. Kern Depo., at 52:2-54:24. Kern became aware of the letter and explicitly advised and directed Hall to obtain an attorney regarding the enforceability of the Agreement and whether the Agreement affected Anadarko. Kern Depo., at 54:2-24; Anadarko's Answers Interrogatories, p. 12; Anadarko's Responses to Requests for Admission, p. 2 attached hereto as *Exhibit C*. Kern not only reviewed the letter, Kern informed his boss Cindy Haefele of the letter as well. Kern Depo. 53:4-53:10. In addition to the two of them, Kern also testified the Anadarko legal department was aware of the letter informing them of Hall's violation of the Agreement. Kern Depo. 55:20-55:22. Anadarko not only had multiple individuals within the company hierarchy aware of the Agreement, they directly advised Hall of the need to get legal advice.

Hall and Anadarko then either received poor legal advice, or misconstrued the legal advice given, and Anadarko continued to employ Hall following receipt of a letter from counsel opining the Agreement was not enforceable. Kern Depo., at 55:1-58:13; Anadarko's Responses to Requests for Admission, p. 3. Following receipt of the letter from Hall's counsel, Anadarko immediately (approximately three days later) resumed their business relationship with Hall, continuing to ignore the Agreement and demonstrating their intent. Not only did Anadarko demonstrate intentional and improper conduct in inducing and coaching Hall on how to breach the Agreement, they attempted to hide behind third-party legal advice not even meant for them,

and further attempted to hide behind an assumption of the application of Colorado law. These facts are further demonstration of the calculated, intentional, and self-interested disregard by Anadarko of the Agreement, constituting intentional and improper interference.

Ultimately, as this Court is aware, J.C. Energy brought an action against Hall to enforce the Agreement. Complaint, *J.C. Energy Services, LLC v. Hall et al.*, No. 14-CV-236-ABJ (D. Wyo.) (Doc. No. 1). This Court found the covenant not to compete portion of the Agreement as valid, that Wyoming law applied, and that Hall unambiguously breached its terms. Opinion Granting Summary Judgment, *J.C. Energy Services, LLC v. Hall et al.*, No. 14-CV-236-ABJ, p. 18 (D. Wyo. Sept. 28, 2015) (Doc. No. 34). Without Anadarko's interference, Hall simply would not have been able to breach the Agreement. The intentional and improper interference of Anadarko caused the initial breach, and their conduct caused a continuing breach even after J.C. Energy tried to assert their rights. As a result of Anadarko's actions, J.C. Energy suffered significant damages.

As the Court aptly stated during the hearing on the cross-motions for summary judgment in J.C. Energy's case against Hall:

> THE COURT: Do you think there's some -- these are ideas that just come into my head. Is there some possibility that Anadarko lured Mr. Hall away from your corporation?
>
> MR. KAUFMAN: Well, Your Honor, that was a question that was posed actually in depositions, and again I don't want to mischaracterize Mr. Hall's testimony because I don't have it in front of me, but I believe the testimony was that he had direct conversations with one of the supervisors at Anadarko, a gentleman named Aaron Kerns, about obtaining his own master service agreement. It was also testified to that Aaron Kerns was a individual who then told Mr. Hall, well, you need to go form your own corporation if we're going to contract with you, which is what led to the formation of Petro Energies and ultimately the entity that then contracted with. So I'm suspecting that you're getting at the question of whether or not Anadarko could have some fault in this matter for enticing or inducing the breach of a contract. Potentially, Your Honor, but we don't have good facts on that at this point in time. What we had–

>THE COURT: Or interfering with a business relationship.
>
>MR. KAUFMAN: Absolutely, Your Honor. What we do have, though, is the testimony and the admissions of Mr. Hall to say, yeah, I signed this agreement, I entered into this agreement, and after the fact I went and did exactly what the agreement said I couldn't do, and that was to negotiate and enter into an agreement to compete. Then lastly, Your Honor, the duration of the–
>
>THE COURT: Well–
>
>MR. KAUFMAN: –noncompete–
>
>THE COURT: –obviously if there was interference with a business relationship, Anadarko would be a corporation that could respond in meaningful damages and also would not require this Court to engage in any weighing exercises required under Hopper.
>
>MR. KAUFMAN: That's, that's correct, Your Honor. Yeah, absolutely correct, Your Honor.

Tr. of Oral Arg. 23-24, *J.C. Energy Services, LLC v. Hall et al.*, No. 14-CV-236-ABJ (D. Wyo. Sept. 22, 2015) (Doc. No. 36).

The material facts discovered in the current matter, although genuinely disputed, demonstrate unequivocally that Anadarko intentionally and improperly interfered with the Agreement between J.C. Energy and Hall. This Court's notion that Anadarko may be liable is absolutely correct. As such, summary judgment in favor of Anadarko is improper.

## II. <u>STANDARD OF REVIEW</u>

This Court cannot grant summary judgment if there is a genuine dispute of material fact. Fed. R. Civ. P. 56. While certainly there are genuine issues of material fact in this matter, Anadarko as a matter of law is not entitled to summary judgment. For purposes of brevity, as Anadarko did in their *Memorandum*, J.C. Energy incorporates herein the fully stated summary judgment standard as provided by the Court in its Opinion Granting Summary Judgment in the

Hall matter. *J.C. Energy Services, LLC v. Hall et al.*, No. 14-CV-236-ABJ, p. 6-7 (D. Wyo. Sept. 28, 2015) (Doc. No. 34).

### III.    ARGUMENT

J.C. Energy commenced this action against Anadarko relating to their improper conduct in July 2016.  Complaint, *J.C. Energy Services, LLC v. Anadarko Petroleum Corp.*, No. 16-CV-193-ABJ (D. Wyo.) (Doc. No. 1).  J.C. Energy brought causes of action for intentional or tortious interference with a contract and intentional or tortious inference with a business expectancy/prospective economic advantage.  *Id.*  Issues of material fact exist on both claims and Anadarko is not entitled to judgment as a matter of law.

Under Wyoming law, a claim for intentional or tortious interference with a contract or business expectancy requires "(1) [t]he existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional and improper interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted."  *Sheaffer v. State ex rel. Univ. of Wyoming ex rel. Bd. of Trustees*, 2009 WY 19, ¶ 51, 202 P.3d 1030, 1044 (Wyo. 2009).

In its *Memorandum in Support of Motion for Summary Judgment* ("*Memorandum*"), Anadarko acknowledges and admits the first and second elements are met.  p. 10.  In J.C. Energy's prior action against Hall, this Court already determined a valid contract exists.  Opinion Granting Summary Judgment, *J.C. Energy Services, LLC v. Hall et al.*, No. 14-CV-236-ABJ, p. 18 (D. Wyo. Sept. 28, 2015) (Doc. No. 34).  It is undisputed Anadarko had knowledge of the Agreement between J.C. Energy and Hall and even had a copy of the Agreement.  Kern Depo., at

47:23-49:3, 51:3-54:24; Anadarko's Answers Interrogatories, p. 10, 13. Further, this Court found Hall unambiguously breached the Agreement. Opinion Granting Summary Judgment, *J.C. Energy Services, LLC v. Hall et al.*, No. 14-CV-236-ABJ, p. 18 (D. Wyo. Sept. 28, 2015) (Doc. No. 34). Disputed issues of material fact, however, exist on the third and fourth elements, which preclude the Court from granting summary judgment. Accordingly, Anadarko is not entitled to judgment as a matter of law.

### A. *Disputed Issues of Material Fact Exist Related to Anadarko's Intentional and Improper Interference*

The third element requires intentional and improper interference. *Sheaffer*, ¶ 51. The facts explicitly show there is a dispute related to Anadarko's intentional and improper interference. "Whether or not interference with a contract was improper is a question of fact." *Id.* The significant issues of material fact related to Anadarko's intent and improper interference preclude the Court from granting summary judgment and will require the Court to weigh the evidence at trial and decide the truth of the matter. As such, Anadarko is not entitled to judgment as a matter of law.

#### *Anadarko clearly engaged in intentional and improper interference*

Although it is undisputed and acknowledged Anadarko knew about the Agreement and had a copy of the Agreement, of significant importance is the contract at issue in this matter is a *covenant not to compete*. The explicit and unambiguous terms of the Agreement provide that Hall shall not compete with J.C. Energy, including but not limited to, "[e]nter into or attempt to enter into an agreement of employment or otherwise undertake to provide services to any person or entity in similar to those services of the Company . . . ." Complaint, *J.C. Energy Services, LLC v. Anadarko Petroleum Corp.*, No. 16-CV-193-ABJ, Ex. A (D. Wyo.) (Doc. No. 1). The facts in this case show Anadarko knew about the covenant not to compete, even had a copy of

the Agreement, all the way up the chain of command from Kern to the legal department. Despite this explicit knowledge about an unambiguous covenant not to compete, Anadarko contracted with Hall based on Kern's sponsorship of him, and then continued to contract with him even after being put on notice of violation of the Agreement, and even worse continued to employ Hall following this Court's adjudication of the validity of the Agreement and Judgment against Hall on December 2, 2015. Anadarko intentionally placed their own interests ahead of any regard for inducing Hall to breach the Agreement, or for continuing to improperly employ Hall after being made clearly aware of this Court's ruling. These facts plainly and clearly show Anadarko's intentional and improper interference with the Agreement.

The timeline of events even further bolster that issues of material fact exist on the third element. J.C. Energy hired Hall in November of 2013. Opinion Granting Summary Judgment, *J.C. Energy Services, LLC v. Hall et al.*, No. 14-CV-236-ABJ, p. 2 (D. Wyo. Sept. 28, 2015) (Doc. No. 34). Hall had absolutely no contact with Anadarko or Kern prior to his employment with J.C. Energy. Hall Requests for Admission Responses, at p. 3 attached hereto as *Exhibit D*. John Mills, an owner of J.C. Energy, failed a drug test in late December 2013 and could no longer work for Anadarko. Opinion Granting Summary Judgment, *J.C. Energy Services, LLC v. Hall et al.*, No. 14-CV-236-ABJ, p. 3 (D. Wyo. Sept. 28, 2015) (Doc. No. 34). Mills informed his employees about the situation but expressly stated J.C. Energy would continue to work for Anadarko. Despite Mills' failed drug test, J.C. Energy continued to grow, expand their operations, and hire additional employees. As a result, Hall signed the Agreement on January 25, 2014.

The facts show that Hall approached Kern about obtaining his own master service contract with Anadarko in March of 2014, less than two (2) months after entering into the

Agreement. Anadarko's Answers to Interrogatories, p. 10. Although Kern claims to have initially turned Hall away claiming Anadarko didn't need additional inspectors at that time, despite Kern's knowledge of the non-compete, Kern still told Hall he would sponsor him and would enter into a master service contract. Kern Depo., at 38:6-39:9. Kern repeatedly told Hall to check back with him. Anadarko's Answers to Interrogatories, p. 10; Hall Depo. 10:16-12:21 attached hereto *Exhibit E*. Based upon these conversations, Hall approached Kern on at least three more occasions. *Id.* Again, as with many other instances of Anadarko's conduct, the simple fact that Kern repeatedly encouraged Hall to approach him for a master service contract demonstrates Anadarko's intent and improper interference. Likewise, it provided Kern with multiple occasions to evaluate whether to proceed in light of the Agreement. Notwithstanding Kern's knowledge about the Agreement, he continued to induce Hall to request a master service contract. Kern could have simply said no, and no breach would have occurred.

Moreover, when Hall spoke with Kern about a master service contract, Kern even asked and questioned Hall about the Agreement and expressed concerns about the Agreement. Hall even provided information from the internet about covenants not to compete to Kern, and they openly discussed the existence of the non-compete. Hall Depo., at 12:6-16. Kern then in turn discussed the covenant not to compete with his supervisor, Cindy Haefele. Kern Depo., at 48:13-49:8 Inexplicably, even with this express knowledge of the covenant not to compete and the implicit concerns, Kern and Haefele still decided to contract with Hall. Kern and Haefele's conduct was yet again consistent with Anadarko's self interest in contracting with Hall, and their actions and blatant disregard of the Agreement demonstrate a clear intent which was improper and interfered with J.C. Energy's Agreement with Hall.

*Anadarko's assistance to Hall*

Following Kern's decision to sponsor Hall in getting a master service contract, on June 4, 2014, Kern sent an email to the supply chain department of Anadarko with Hall's information to setup a contract with Hall. Hall formed his company, Petro Energies, Inc. ("Petro") on June 26, 2014. Opinion Granting Summary Judgment, *J.C. Energy Services, LLC v. Hall et al.*, No. 14-CV-236-ABJ, p. 5 (D. Wyo. Sept. 28, 2015) (Doc. No. 34). Despite Kern testifying he did not assist Hall in forming his company, Kern explicitly testified he knew a company had to be formed as Anadarko does not do business with individuals. Kern Depo., at 44:1-45:25. He understood at the end of the supply chain process, Hall would have a company and a master service contract to enter into, in direct violation of the Agreement. *Id.* Kern had unfettered discretion and control about which companies he contracted with. *Id.* at 18:15-24. Once through the process and checklist to conduct business with Anadarko, supply chain then told Kern that Hall was Petro. Prior to Kern and Anadarko initiating this process, Hall did not have a company. In fact, Hall's company Petro Energies, Inc., was not even formed until June 26, 2014, three weeks after Kern began the process. Opinion Granting Summary Judgment, *J.C. Energy Services, LLC v. Hall et al.*, No. 14-CV-236-ABJ, p. 5 (D. Wyo. Sept. 28, 2015) (Doc. No. 34). Thus, it is clear from the facts that Anadarko coached Hall on what he needed to be able to contract with them.

Furthermore, even if Kern did not have direct involvement with Hall forming his company, the supply chain of Anadarko unequivocally assisted and even required that Hall form his own company. *Id.* at 41:1-15, 44:1-45:25; Hall Depo., at 38:4-18. As is readily admitted in the record, Anadarko only does business with entities and requires and provides information necessary to assist individuals in forming companies. Kern Depo., at 41:1-15, 44:1-45:25.

Kern's explicit knowledge Hall would ultimately form a company as well as the direct assistance of Anadarko's supply chain in forming the company undoubtedly creates an issue of material fact that Anadarko acted with intentional and improper interference in assisting Hall despite their knowledge of the Agreement, and therefore summary judgment is not proper.

Kern on behalf of Anadarko and Hall on behalf of Petro then entered into a Master Service Contract on or about July 24, 2014, while still under the master service contract with Hall's employer, J.C. Energy.  Opinion Granting Summary Judgment, *J.C. Energy Services, LLC v. Hall et al.*, No. 14-CV-236-ABJ, p. 5 (D. Wyo. Sept. 28, 2015) (Doc. No. 34).  On August 21, 2014, Hall informed J.C. Energy of his Master Service Contract with Anadarko and left his employment.  The very next day, Hall began working under Kern for Anadarko.  *Id.*

### ***Anadarko intentionally interfered with the non-compete for the second time***

On September 8, 2014, counsel for J.C. Energy sent Hall a cease and desist letter for Hall's actions in violation of the Agreement.  Kern Depo., at 52:2-54:24.  Hall immediately took the letter to Kern.  The letter circulated the Anadarko chain of command, including to Kern's superiors and Anadarko's legal department.  Kern and Haefele then instructed Hall to obtain a legal opinion regarding the enforceability of the Agreement against Hall.  Kern Depo., at 54:2-24; Anadarko's Answers Interrogatories, p. 12; Anadarko's Responses to Requests for Admission, p. 2.  Kern and Haefele did not allow Hall to work until he received a legal opinion about the enforceability of the Agreement.  *Id.*  Anadarko's requirement that Hall seek legal advice regarding the enforceability of the letter as well as not permitting Hall to work indisputably show Anadarko acted intentionally and improperly in interfering with the Agreement.  It demonstrates clearly that Anadarko was aware of the Agreement, at least considered the effect of the Agreement, were concerned enough they had Hall seek legal counsel,

and it shows that they decided to maneuver around the Agreement and allow their relationship with Hall to continue. At the very least, issues of material fact exist on this issue which preclude summary judgment.

On or about September 12, 2014, Hall received poor legal advice in a letter from his counsel that the Agreement was not enforceable, assuming Colorado law applied. Kern Depo., at 55:1-58:13; Anadarko's Responses to Requests for Admission, p. 3. Hall immediately provided a copy of the letter to Anadarko. *Id.* Anadarko then inexplicably relied upon the letter (despite that the letter was only advising Hall) to immediately reemploy Hall. In their *Memorandum*, Anadarko attempts to place blame upon Hall for providing insufficient and incorrect information to his counsel. p. 12. However, Anadarko still choose to rely upon the faulty legal analysis, and with the knowledge that J.C. Energy would pursue enforcement of the Agreement. Moreover, a careful look at the legal advice given to Hall shows that Colorado counsel's opinion was predicated on the application of Colorado law, not Wyoming law. Thus, Anadarko yet again demonstrated their intent in attempting to maneuver around the Agreement by ignoring the clear language of the Agreement which applied Wyoming law, plainly stated in the Agreement, and which this Court adjudicated to be valid and enforceable. Anadarko cannot claim their decision to reemploy Hall was not calculated, intentional, and in complete interference of the Agreement. Anadarko knew exactly what they were doing, they thought they were placing any potential liability on Hall, and again continued to act in their own self-interests.

On the same date, September 12, 2014, Kern also decided to hold a meeting with Caleb Kinsella and Ken Mills, the other owners of J.C. Energy. Kern Depo., at 63:24-64:4. Kern met with Kinsella and Mills to discuss whether or not J.C. Energy was going to pursue enforcing the Agreement with Hall. Kinsella Depo., at 23:9-25:10 attached hereto as *Exhibit F*. At the

meeting, Kinsella informed Kern that J.C. Energy would pursue the Agreement and Kern immediately terminated the relationship with Kinsella. Kern's action in terminating Kinsella, with the direct knowledge of his superiors, demonstrates there are disputed issues of material fact related to Anadarko's intentional and improper conduct. Moreover, a clear dispute of material fact exists as Kern claims he terminated the relationship because of poor behavior of Kinsella, while J.C. Energy vehemently claims Kern terminated the relationship because of the non-compete and their insistence on seeking enforcement of the Agreement. Kern Depo., at 64:9-65:25; Kinsella Depo., at 23:9-25:10. The meeting was recorded and supports the position of J.C. Energy. Kern Depo., at 59:2-62:11. Accordingly, there are issues of material fact that prevent the Court from entering summary judgment.

Eventually Kern terminated the relationship with J.C. Energy completely. Opinion Granting Summary Judgment, *J.C. Energy Services, LLC v. Hall et al.*, No. 14-CV-236-ABJ, p. 6 (D. Wyo. Sept. 28, 2015) (Doc. No. 34). Once again, the termination of this relationship shows intentional and calculated conduct on the part of Kern, and thus Anadarko.

### *Kern openly admits ill will toward J.C. Energy*

Furthermore, an issue of material fact exists as to the intentional and improper interference of Anadarko due to Kern's ill will towards J.C. Energy. Comment r. of Section 766 Restatement (Second) of Torts provides, "the presence or absence of ill will toward the person harmed may clarify the purposes of the actor's conduct and may be, accordingly, an important factor in determining whether the interference was improper." (1979). Kern testified in his deposition that he was not pleased with Kinsella. Kern Depo., at 27:19-29:13, 30:11-22, 64:13-22. When Kern terminated his relationship with Kinsella, a shouting match with profanities, which almost resulted in a physical altercation, ensued between Kern and Kinsella. *Id.* at 76:2-

77:22.  Although Kern argues he terminated Kinsella because of his behavior and performance, Kinsella had been the main point of contact for J.C. Energy for nearly nine months prior to his termination.  *Id.* at 27:19-29:13.  It was not until the dispute with Hall came to its peak that Kern fully acted upon any alleged concerns he had with Kinsella.  There is no question that during this period of time animosity existed between Kern and Kinsella.  Thus, any conduct by Kern and Anadarko to continue contracting with Hall in known violation of the Agreement, must be viewed in light of the above-cited comments to the Restatements, and the Court must consider the ill will by Kern.  Therefore, an issue of material fact exists relating to Kern's ill will and animosity towards J.C. Energy as intentional and improper motive for inducing Hall to breach the Agreement and Anadarko's participation in that interference.

> ***Issues of Material Fact Exist Relating to Anadarko's Inducement of Hall and Continual Interference with the Agreement***

As fully discussed above, the third element for a claim for intentional or improper interference with a contract or business expectancy requires the intentional and improper interference to induce or cause a breach of the contract or business expectancy.  *Sheaffer*, 2009 WY 19, ¶ 51. The standard distinctly allows that the intentional interference induce or cause a breach.  "The question whether the actor's conduct caused the third person to break his contract with the other raises an issue of fact."  RESTATEMENT (SECOND) OF TORTS § 766 cmt. o (1979).  As discussed in detail above, there are clearly disputed issues of material fact on the actions of Anadarko in inducing and causing Hall to breach the terms of the Agreement, and continuing to contract with Hall despite their knowledge of the Agreement.

Perhaps, the most important, disputed fact is, without Kern sponsoring Hall for a master service contract, Hall could not have breached the covenant not to compete.  Kern Depo., at 68:20-69:5.  The facts are that Hall had no contact with Anadarko prior to his employment with

J.C. Energy and no contact with any other Anadarko production facility supervisor besides Kern during his employment. Hall Requests for Admission Responses, at p. 3. There is no other way to obtain a master service contract for the type of work performed other than through an Anadarko production facility supervisor. Kern Depo., at 68:20-69:5. If Kern had simply said no when Hall approached, there would have been no breach. Hall would have been out of luck and without a competing contract. Disputed issues of material fact clearly prevent summary judgment on the intentional and improper interference of Anadarko inducing or causing the unambiguous breach of the Agreement.

> A claim for intentional and tortious interference with applies to an interference
>
> in which the actor does not act for the purpose of interfering with the contract or desire it but knows that the interference is certain or substantially certain to occur as a result of his action. The rule applies, in other words, to an interference that is incidental to the actor's independent purpose and desire but known to him to be a necessary consequence of his action.

RESTATEMENT (SECOND) OF TORTS § 766 cmt. j (1979). As readily admitted by Anadarko and discussed at length above, Anadarko knew about the covenant not to compete between J.C. Energy and Hall. Notwithstanding, Kern assisted Hall in doing exactly what the Agreement prohibited—entering into a contract for the same services. Not only does Kern's actions show his intent with his conduct, but also causation in that Kern knew, as a necessary consequence of his actions, a breach of the Agreement would occur. Kern's supervisors and Anadarko's legal department were also keenly aware that Anadarko's actions would directly result in a breach of the Agreement.

As a matter of law, Anadarko is not entitled to summary judgment. Given the disputed material facts related to Anadarko's intentional and improper interference causing and inducing a breach, summary judgment simply cannot be granted.

B.     *Disputed Issues of Material Fact Exist Related to the Damages J.C. Energy's Sustained*

The fourth element for a claim for intentional or tortious interference with a contract or business expectancy requires "resultant damage to the party whose relationship or expectancy has been disrupted." *Sheaffer*, 2009 WY 19, ¶ 51. J.C. Energy has been significantly damaged by the intentional and improper interference of Anadarko, which caused Hall to breach the Agreement. The record in this matter clearly prevents this Court from finding there are no issues of material fact and granting summary judgment on damages in favor of Anadarko.

J.C. Energy suffered damages in excess of $265,000 due to Anadarko's improper and intentional conduct. J.C. Energy's First Supp. Initial Disclosures, p. 1 attached hereto as *Exhibit G*. As a direct result of Anadarko's intentional interference, J.C. suffered damages not only from the loss of Hall as an employee, but also suffered damages from the loss of Kinsella working for Anadarko. *Id.*

Anadarko, specifically Kern testified upon a leading question by his counsel, that he allowed J.C. Energy to replace Hall with another inspector employee. Kern Depo., at 75:17-76:1. The evidence of J.C. Energy, however, is quite to the contrary. The employment records of J.C. Energy indicate they did not replace Hall. J.C. Energy's First Supp. Responses to Interrogatories, p. 4-10 attached hereto as *Exhibit H*. J.C. Energy did not employ additional inspectors immediately after Hall's departure. *Id.* The evidence showed in fact that J.C. Energy had to continue to cut inspectors after Halls' departure. *Id.* Furthermore, Hall left and Kinsella was terminated less than a month apart. Thus, disputed material facts exist on the damages sustained as a result of Hall leaving his employment due to Anadarko's inducement.

As discussed in detail above, issues of material fact exist related to Kern's termination of Kinsella. Anadarko contends they terminated Kinsella because of poor performance while J.C. Energy contends Kern terminated Kinsella because they sought to enforce their Agreement against Hall. The audio recording of the meeting between Kern, Mills and Kinsella indicates Kern terminated Kinsella as a direct result of the cease and desist letter and dispute with Hall. While it cannot be said J.C. Energy or Kinsella were guaranteed work by Kern or Anadarko, Anadarko certainly cannot fairly state they are permitted to intentionally and improperly interfere with an Agreement and not pay any associated damages. At the very minimum, an issue of fact exists as to the total amount of damages caused by Anadarko.

Anadarko then disingenuously argues that J.C. Energy already has a judgment against Hall and cannot seek further damages. The Restatement (Second) of Torts explicitly provides otherwise:

> The fact that the plaintiff has an available action for breach of contract against the third person does not prevent him from maintaining an action under the rule stated in this Section against the person who has induced or otherwise caused the breach. The two are both wrongdoers, and each is liable to the plaintiff for the harm caused to him by the loss of the benefits of the contract. (Compare § 875). Even a judgment obtained against the third person for the breach of contract will not bar the action under this Section so long as the judgment is not satisfied. Payments made by the third person in settlement of the claim against him must, however, be credited against the liability for causing the breach and so go to reduce the damages for the tort. (See § 774A(2)).

RESTATEMENT (SECOND) OF TORTS § 766 cmt. v (1979). As the record clearly indicates, J.C. Energy obtained a judgment against Hall in the amount of $165,000. Judgment, *J.C. Energy Services, LLC v. Hall et al.*, No. 14-CV-236-ABJ, p. 1 (D. Wyo. Dec. 2, 2015) (Doc. No. 55). As Anadarko does not dispute, J.C. Energy has not collected the full amount from Hall. *Memorandum*, p. 13. Additionally, J.C. Energy has claimed damages against Anadarko greatly in excess of the judgment amount.

Due to the significant issues of material fact related to damages, Anadarko is not entitled to summary judgment in their favor. The issues of material fact on damages must be weighed and decided by the Court at trial.

C. ***Anadarko is Not Entitled to Summary Judgment on J.C. Energy's Cause of Action for Tortious or Intentional Interference with a Business Expectancy***

Under Wyoming law, the elements for a cause of action for intentional or tortious interference with a business expectancy are very similar to the elements for a cause of action for intentional or tortious inference with a contract. *Gore v. Sherard*, 2002 WY 114, ¶ 13, 50 P.3d 705, 710 (Wyo. 2002); W.C.P.J.I. 21.02. As discussed in detail and at length above, there are significant issues of material fact related to the third element that Anadarko's intentional and improper interference induced or caused a breach as well as the fourth element that resultant damage occurred to J.C. Energy. Accordingly, for the reasons previously stated, Anadarko is not entitled to judgment as a matter of law on the claim for tortious or intentional interference with a business expectancy.

Moreover, the allegations of Anadarko in their *Memorandum* that J.C. Energy's claim should be dismissed support that disputed issues of material fact exist on J.C. Energy's potential business expectancy in their at-will employment of Hall. Comment j. of § 766 of the Restatement (Second) of Torts states, in part, "[o]ne's interest in a contract terminable at will is primarily an interest in future relations between the parties, and he has no legal assurance of them. For this reason, an interference with this interest is closely analogous to interference with prospective contractual relations." As such, there are genuine issues of material fact on J.C. Energy's claim for intentional or tortious interference with a business expectancy.

## V. CONCLUSION

Anadarko completely failed to meet their burden to show that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law. Genuine factual disputes exist related to Anadarko's intentional and improper interference with the Agreement between J.C. Energy and Hall. Accordingly, Anadarko is not entitled to judgment as a matter of law.

WHEREFORE, Plaintiff J.C. Energy requests that this Court deny *Defendant's Motion for Summary Judgment*.

DATED this 28th day of April 2017.

J.C. ENERGY SERVICES, LLC

By: /s/ Matthew D. Kaufman
Matthew D. Kaufman (Wyo. Bar #6-3960)
Marianne K. Shanor (Wyo. Bar #7-4841)
HATHAWAY & KUNZ, LLP
P.O. Box 1208
Cheyenne, WY 82003-1208
Phone: (307) 634-7723
Fax: (307) 634-0985
mkaufman@hkwyolaw.com
mshanor@hkwyolaw.com

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

This is to certify that on the 28th day of April, 2017 a true and correct copy of the foregoing was served upon counsel as follows:

| | |
|---|---|
| Robert C. Jarosh | [ x ]  EM/ECF/Electronic Filing |
| Laurene S. Rogers | [   ]  U.S. Mail |
| Hirst Applegate, LLP | [   ]  Fax: |
| 1720 Carey Avenue, Suite 400 (82001) | [   ]  Hand Delivered |
| P.O. Box 1083 | |
| Cheyenne, WY  82003-1083 | |

/s/ Matthew D. Kaufman